## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

W.G. WADE SHOWS, INC.,                    )
                                          )
    Plaintiff,                        )
                                          )
    vs.                               )    Case No. 6:19-cv-03119-SRB
                                          )
SPECTACULAR ATTRACTIONS, INC.,            )
                                          )
    Defendant.                        )
                                          )
                                          )

## ORDER

Before this Court is Plaintiff W.G. Wade Shows, Inc.'s Motion to Dismiss Defendant's

Amended Counterclaim.  (Doc. #19).  For the following reasons the motion is denied.

### I.    LEGAL STANDARD

Plaintiff moves to dismiss Defendant Spectacular Attractions, Inc.'s Amended

Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Under Rule 12(b)(6), a court

may dismiss a claim in a pleading for "failure to state a claim upon which relief can be granted."

To survive dismissal for failure to state a claim, a pleading "must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted) (quoting *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir.

2015).  The Court must accept all facts alleged in a pleading as true when deciding a 12(b)(6)

motion to dismiss.  *See Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir.

2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of

the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable").

## II.    BACKGROUND

In its Amended Counterclaim,[1] Defendant alleges the following facts, which the Court assumes true and construes in Defendant's favor for purposes of Plaintiff's motion. *Data Mfg.*, 557 F.3d at 851.   "On July 6, 2007, both parties entered into a 'Letter of Understanding' ('LOU') outlining how proceeds earned would be divided through their joint efforts in promoting and producing State Fairs at various locations around the country." (Doc. #14, ¶ 4).  The LOU is an agreement that "resulted in a general partnership between" Plaintiff and Defendant.  (Doc. #14, ¶ 5).  The LOU "included the Missouri State Fair" ("MSF").  (Doc. #14, ¶ 6).  The parties "strictly followed" the LOU "from 2007 until 2012, when it appeared to expire." (Doc. #14, ¶ 6).  "After 2012, the parties nevertheless continued to perform under the LOU, with [Defendant] fully performing its obligations thereunder, between 2012 and 2017." (Doc. #14, ¶ 9).  "The parties continued to split and divide proceeds earned from the [MSF] per the LOU up and until the 2018" MSF.  (Doc. #14, ¶ 13).

"[W]hat resulted" from the parties' interactions was either "a continuation of the original LOU or a series of One (1) year contracts based on putting on each annual fair event." (Doc. #14, ¶ 10).  Plaintiff "made misrepresentations to the MSF that the MSF could give all proceeds earned by" the parties to Plaintiff and that Plaintiff "would then split the proceeds with [Defendant] per their own arrangement." (Doc. #14, ¶ 24).  "Following the conclusion of the 2018" MSF, Plaintiff "decided not to split the proceeds earned at the" 2018 MSF with Defendant.  (Doc. #14, ¶ 25).  In its Amended Counterclaim, Defendant asserts claims for breach of contract (Counterclaims I and II), conversion (Counterclaim III), negligence (Counterclaim

---

[1] On March 27, 2019, Defendant removed Plaintiff's action to this Court.  (Doc. #1).  Plaintiff brings claims for declaratory judgment, negligent misrepresentation, breach of contract, and promissory estoppel.  (Doc. #1-2).  On May 31, 2019, Defendant filed its Amended Counterclaim.  (Doc. #14).

IV), breach of fiduciary duty (Counterclaim V), fraud (Counterclaim VI), and intentional interference with contract (Counterclaim VII).  (Doc. #14).

## III.  DISCUSSION

Defendant asserts two grounds for dismissal as a matter of law: 1) all of Defendant's counterclaims fail to state a claim as a matter of law under Missouri's statute of frauds, and, alternatively, 2) Defendant's counterclaims that sound in tort fail to state a claim as a matter of law under Missouri's economic loss doctrine.  The Court will address each argument in turn.

### A.  Statute of Frauds

In Counterclaim I, Defendant alleges that "[u]nder the LOU and/or subsequent one (1) year oral contracts," both Plaintiff and Defendant "were entitled to a portion of the proceeds from the MSF" and that Plaintiff "breached the contracts by not paying [Defendant] the portion of the proceeds earned at the 2018 MSF."  (Doc. #14, ¶¶ 28–29).  In Counterclaim II, Defendant alleges that Plaintiff "has anticipatorily repudiated the agreement with the [MSF] by unequivocally claiming that it will exclude [Defendant] from future [MSFs] per the agreement for the remaining five (5) year agreement with the State of Missouri."  (Doc. #14, ¶ 31).

In challenging Defendant's counterclaims, Plaintiff invokes the portion of Missouri's statute of frauds that bars enforcement of oral agreements that cannot be performed within one year of being made.  (Doc. #20, p. 7).  That portion of the statute of frauds states the following:

> No action shall be brought . . . to charge any person . . . upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith . . . .

Mo. Rev. Stat. § 432.010.  "[A] contract is not unenforceable under the statute of frauds if it could possibly be performed in compliance with its terms within one year, even though the actual

performance is expected to continue over a much longer period." *Warren v. Tribune Broad. Co., LLC*, 512 S.W.3d 860, 866 (Mo. App. W.D. 2017) (internal quotation marks omitted) (quoting *Crabb v. Mid-Am. Dairymen, Inc.*, 735 S.W.2d 714, 716 (Mo. banc 1987)). "Contracts that do not expressly limit the time of the contract or that are terminable at will or with a notice period of less than one year may be completely performed within one year and are, therefore, outside the statute of frauds." *Downey v. McKee*, 218 S.W.3d 492, 496 (Mo. App. W.D. 2007) (citing *Kansas City Stock Yards Co. v. A. Reich & Sons, Inc.*, 250 S.W.2d 692, 699 (Mo. 1952), *overruled in part on other grounds by Gateway Chem. Co. v. Groves*, 338 S.W.2d 83, 86–87 (Mo. 1960)). Missouri's statute of frauds "does not apply to an oral contract of partnership which fixes no definite duration, since it is susceptible of dissolution within one year and becomes, in effect, a partnership at will." *Grissum v. Reesman*, 505 S.W.2d 81, 88–89 (Mo. 1974) (internal citations omitted).

Plaintiff argues that Missouri's statute of frauds bars Counterclaims I and II because "any implied one-year contract for the 2018 fair would have been made" on or before March 17, 2017, more than one year before the fair was performed in August 2018, and "any implied partnership would have been for a fixed period of time exceeding one year from the making of the agreement." (Doc. #20, p. 11). Defendant points to its allegation that the parties entered into a series of one-year contracts to produce each annual MSF and share MSF proceeds, which Defendant argues must be assumed true, and to the absence of any allegation that the parties' oral partnership agreement had any fixed duration, which Defendant argues the Court must construe in Defendant's favor. (Doc. #26, p. 3). Defendant argues that these allegations "bring[] Defendant's amended counterclaims outside the statute of [frauds]." (Doc. #26, p. 4).

At this stage in the litigation, when this Court must accept Defendant's allegations as true and construe them in its favor, Missouri's statute of frauds does not bar Defendant's counterclaims. Plaintiff alleges that the parties entered into either "a continuation of the original LOU or a series of One (1) year contracts based on putting on each annual fair event." (Doc. #14, ¶ 10). In either alternative, the alleged contract(s) could be performed within one year. If the oral agreement was "a continuation of the original LOU," then that agreement was formed in 2012, after the original LOU "appeared to expire" (Doc. #14, ¶ 6) but before the 2012 MSF. As alleged, the parties "continued to perform under the LOU, with [Defendant] fully performing its obligations thereunder, between 2012 and 2017." (Doc. #14, ¶ 9). This allegation means, for instance, that Defendant performed its obligations under this oral agreement at the 2012 MSF. It was therefore possible for Defendant to perform under this agreement within one year after it was allegedly formed in 2012. Missouri's statute of frauds does not bar enforcement of such an agreement. *See Warren*, 512 S.W.3d at 866–67 (quoting *Murphy v. Buschman-Jennings, Inc.*, 382 S.W.2d 29, 33 (Mo. App. 1964)) (holding that statute of frauds did not bar enforcement of defendant broadcasting company's oral agreement to pay plaintiff employee "an annual revenue-based bonus for every calendar year in which the sales department exceeded [its] revenue goal," which could possibly have been performed within one year after it was made "[e]ven though actual performance was 'liable to occupy more than a year'" because "[i]f the sales department had exceeded the revenue goal for 2012, then [plaintiff] would have been entitled to a revenue-based bonus at the beginning of 2013—within one year after the revenue-based bonus contract was made in August 2012").

Alternatively, if the alleged oral agreement was "a series of One (1) year contracts" for "each annual fair event," (Doc. #14, ¶ 10), then a new contract was made each year and

performed at the MSF that same year.  Again, the statute of frauds does not bar enforcement of

such agreements.  As to the alleged partnership agreement, Defendant's allegations do not show

that it had a fixed duration.  The alleged partnership was therefore "susceptible of dissolution"

within a year of being made and the statute of frauds does not bar enforcing it.  *Grissum*, 505

S.W.2d at 88–89.  As alleged, Defendant's breach-of-contract counterclaims do not fall under

Missouri's statute of frauds.  Plaintiff's motion to dismiss on that basis is denied.

### B.  Economic Loss Doctrine

In Counterclaims III–VII, Defendant alleges that Plaintiff "has converted proceeds duly

owed and earned by" Defendant, "was negligent in its performance under the contract," breached

the fiduciary duty it owed to Defendant "as general partners," intentionally "misrepresented to

[Defendant] that it would share in the proceeds from the new agreement in accord with the 2007

LOU and (alternatively) all one (1) [year] contracts flowing therefrom," and "intentionally

interfered with [Defendant's] contractual rights with the MSF . . . ." (Doc. #14, ¶¶ 34, 42, 45–46,

49–53, 62–63).  Plaintiff invokes Missouri's economic loss doctrine to challenge these

counterclaims.  (Doc. #20, p. 13). "The economic loss doctrine prohibits a commercial buyer of

goods from seeking to recover in tort for economic losses that are contractual in nature." *Dannix*

*Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 905–06 (8th Cir. 2013) (internal citations

omitted).  "The economic loss doctrine, however, has been held not to bar an action in tort if the

contract recognizes a special relationship." *Autry Morlan Chevrolet Cadillac, Inc. v. RJF*

*Agencies, Inc.*, 332 S.W.3d 184, 193 (Mo. App. S.D. 2010) (citing *Am. Mortg. Inv. Co. v.*

*Hardin-Stockton Corp.*, 671 S.W.2d 283, 293 (Mo. App. W.D. 1984)) (noting that "the economic

loss doctrine grew out of claims of tort which were alleged against builders of homes, or

instances where a plaintiff sought to hold a manufacturer or distributor of a product liable in tort, as opposed to a contract action from which a fiduciary duty arose").

It is undisputed that Defendant's claimed damages are economic losses. Plaintiff argues the economic loss doctrine bars Defendant's conversion counterclaim because Defendant's "alleged loss in not receiving proceeds from [Plaintiff] . . . only stems from the alleged agreement to share proceeds," not conduct independent from the contract. (Doc. #20, p. 14). Defendant responds that the economic loss doctrine does not apply to "cases involving a fiduciary relationship" and therefore does not apply to its tort counterclaims "because there is a general partnership here, and hence a fiduciary duty." (Doc. #26, p. 6) (citing *Bruce Martin Const., Inc. v. CTB, Inc.*, No. 1:10CV205 SNLJ, 2012 WL 718624, at \*4 n.3 (E.D. Mo. Mar. 6, 2012), *aff'd*, 735 F.3d 750 (8th Cir. 2013)).

Even if the economic loss doctrine applied to contracts like the one in this case,[2] Defendant has sufficiently pleaded that it formed a fiduciary relationship with Plaintiff, which brings Defendant's tort counterclaims outside the doctrine's scope. *See Autry Morlan*, 332 S.W.3d at 193 (holding that economic loss doctrine did not bar plaintiff automobile dealership's negligence claim against defendant financing provider, provider's employee, and insurance broker because plaintiff's allegations "make it clear that the nature of the tort action asserted by

---

[2] As an initial matter, this Court questions whether the Supreme Court of Missouri would hold that the economic loss doctrine applies to tort claims arising from a contract to perform services and divide proceeds, like the contract alleged here, as opposed to one for the sale of goods. *See Steadfast Ins. Co. v. ARC Steel, LLC*, No. 16-3214-CV-S-SRB, 2019 WL 2090696, at \*3 (W.D. Mo. May 13, 2019) (holding that economic loss doctrine did not bar plaintiff's negligence claim against defendant subcontractor because, "[w]hile goods in the form of steel [were] part of the subcontract," the negligence claim was "based on the alleged manner in which Defendant installed the steel and the damage this conduct caused, not any defective condition of the steel itself"); *Heartland Med., LLC v. Express Scripts, Inc.*, No. 4:17-CV-02873 JAR, 2018 WL 4216669, at \*2 (E.D. Mo. Sept. 5, 2018) (collecting cases) ("[D]istrict courts in Missouri have noted that the economic loss doctrine originated in cases arising under the Uniform Commercial Code ("UCC"), making it inapplicable to contracts for services like the one at issue in this case."); *MEA Fin. Enters., LLC v. Fiserv Sols., Inc.*, No. 13-05041-CV-SW-BP, 2013 WL 12155467, at \*3 (W.D. Mo. Oct. 16, 2013) (holding that "[b]ecause this case involves a contract for services that does not fall under the UCC, the public policy reasons for applying the economic loss doctrine to product defect claims are not applicable here."). The Court need not address this issue here because Defendant plausibly alleges a fiduciary relationship.

7

[plaintiff] arises from the rendering of services to be provided by a contract and that the conduct of [defendants] is the basis of the allegations and not the state of a home or product" and because plaintiff "alleged the existence of a fiduciary duty arising out of" his relationship with defendants).

Defendant sufficiently alleges the existence of a fiduciary duty arising out of its relationship with Plaintiff. Under Missouri law, "[a] 'partnership' is an association of two or more persons to carry on as co-owners a business for profit . . . ." Mo. Rev. Stat. § 358.060.1. "A partnership agreement may be oral or written, express or implied from the parties' acts or conduct." *Arnold v. Erkmann*, 934 S.W.2d 621, 630 (Mo. App. E.D. 1996) (internal citation omitted). "Once a partnership is created, the partners owe a fiduciary duty to one another, regardless of the legal jargon used to describe the method of creating the partnership." *Chapman v. Dunnegan*, 665 S.W.2d 643, 647 (Mo. App. E.D. 1984) (internal citations omitted). Here, Defendant alleges that the parties entered into the LOU, which "outlin[ed] how proceeds earned would be divided through their joined efforts in promoting and producing State Fairs" and "resulted in a general partnership between" the parties, "with each party sharing in profits, losses, and making decisions and managing certain aspects of the purpose of the partnership." (Doc. #14, ¶¶ 4–5). Defendant alleges that "[t]he parties remained equally at financial risk if they failed to perform," "[e]ach had performance obligations that could result in liability if the fair was not properly run," and "the parties continued to split and divide proceeds earned from the [MSF] per the LOU up and until the 2018 fair." (Doc. #14, ¶¶ 12–13).

At the very least, Defendant plausibly alleges a partnership with Plaintiff "implied from the parties' acts or conduct." *Arnold*, 934 S.W.2d at 630. As a matter of law, this alleged partnership gave rise to a fiduciary relationship between the parties, *Chapman*, 665 S.W.2d at

8

647, a relationship that brings Defendant's tort counterclaims outside the economic loss doctrine. *Autry Morlan*, 332 S.W.3d at 193. The Court need not address whether other exceptions to the economic loss doctrine may apply in this case. *See, e.g.*, *MEA*, 2013 WL 12155467, at *3 (holding that Missouri's economic loss doctrine does not apply to fraud and tortious interference claims). Plaintiff's motion to dismiss on that basis is denied. Plaintiff asserts no other grounds for dismissal.

## IV.    CONCLUSION

Accordingly, it is **ORDERED** that Plaintiff W.G. Wade Shows, Inc.'s Motion to Dismiss Defendant's Amended Counterclaim (Doc. #19) is denied.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: July 19, 2019

9